

# NUMBER 13-20-00086-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN THE INTEREST OF J.M.M., A CHILD

On appeal from the 85th District Court
of Brazos County, Texas.

## MEMORANDUM OPINION

**Before Justices Benavides, Longoria, and Tijerina**
**Memorandum Opinion by Justice Benavides**

In this child custody dispute tried to the bench, Mother made an oral trial amendment alleging family violence by Father and seeking sole managing conservatorship of their child, J.M.M. After finding Father had a history of family violence, the trial court appointed Mother sole managing conservator, Father as possessory conservator with standard possession and access to the child, and made several other related orders, including a requirement that Mother and Father not see each other during

exchanges. By two issues, Father contends that (1) Mother's oral trial amendment was ineffective because she failed to make a corresponding amendment to her pleadings, and (2) the trial court abused its discretion by ordering the parents to leave J.M.M. at a facility that is not licensed as a child-care provider during exchanges.[1] We affirm.

## I. BACKGROUND

Mother and Father were in a dating relationship when Mother became pregnant. After J.M.M.'s birth, Mother and Father's relationship ended, and Mother and the child moved from the parties' home in College Station to the Houston area.

### A. Pleadings

Father filed an original suit affecting the parent-child relationship (SAPCR) asking that the parties be appointed joint managing conservators and that he be granted the exclusive right to designate the primary residence of the child. Mother filed a counter petition also asking that the parties be appointed joint managing conservators but that she be granted the exclusive right to designate the primary residence.

### B. Pretrial Hearing

The trial court held a pretrial conference on August 16, 2019. In accordance with the trial court's local rule, each party filed a statement of proposed relief prior to the hearing. Consistent with her pleading, Mother's statement requested that the parties be named joint managing conservators, Mother have the right to designate the child's primary residence, and Father have standard possession and access to the child according to the Texas Family Code. During the hearing, Mother stated, "I think this [case]

---

[1] This case is before the Court on transfer from the Tenth Court of Appeals in Waco pursuant to a docket-equalization order by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001.

is fairly straight forward," and when the trial court asked what the case was about, Mother responded, "custody."

## C. Trial

A one-day bench trial was conducted on August 27, 2019. As the petitioner, Father made the first opening statement. He framed the issues, in relevant part, as follows:

> I think the evidence would show that both parties very much love this one-year-old little boy, and that they are both capable of basic care of [the child]. But I think the evidence will show that [Mother] has a history of instability that causes [Father] some concern about her being the primary conservator at this point.
>
> Your Honor, I think the evidence will show that [Mother] has a history of difficult interpersonal relationships; that in the past couple of years she has accused one coworker of physical violence against her, another coworker of forcing himself on her sexually; that she has difficult interpersonal relationships with family members, her extended family members; that they kicked her out of the home when she was pregnant, and she's made allegations against her father of numerous different problems.
>
> I think the evidence will show that [Mother] has made allegations against [Father] of being physically violent to her; that an allegation that she made during the time they were together resulted in his arrest.
>
> I think the evidence will show that in thirties [sic]—his 36 years, he has never been arrested except for the one time when he was with [Mother].
>
> I think the evidence will show that this is the—the first time in his entire life that he's ever been accused of any sort of physical violence by a woman or a man.
>
> The evidence will show that [Mother], after he was arrested, retracted her statement, her allegations, but now that this litigation is pending that she's making them once again and they're now larger than they were even initially.
>
> . . . .

3

Judge, we're asking that [Father] be appointed the primary managing conservator. We think the evidence will show that he has more stability at this time than—than [Mother] does.

Mother then made her opening statement:

[Mother's] most difficult interpersonal relationship has been with [Father] because he has abused her many different times, many different ways. I believe that the stated statistic is it takes seven times for an abused person to leave and stay gone from an abusive relationship, so the fact that she would make this statement to the police and then retract that statement later —and this was a year ago, over a year ago at this point—what—is not a surprise. That's—that's to be expected, that someone in an abusive situation, a very young parent who has been controlled and manipulated, and that's what the evidence will show.

That this—we don't necessarily dispute that [Father] is a decent parent to his son. The issue isn't that. The issue is his treatment of [Mother]. And his allegations of instability, that's a young mom who is trying to leave an abusive relationship and re-establish her life. She is a young mom. She's trying to figure this out. We have a very young child in this relationship and they both have been trying to figure it out.

And so any allegations regarding [the child], really, I don't think that they go any deeper. The issue is the relationship between [Father] and [Mother], and we have plenty of evidence and witnesses to show that this is an abusive relationship. And, actually, as in light of that and the nature of the abuse, after reviewing everything, Judge, I am requesting a trial amendment. We had requested joint managing conservatorship, but per the family code, if the Court finds that there has been abuse in the relationship, then joint managing conservatorship isn't allowed and so it would be just sole managing conservatorship.

And so if the Court finds the allegations of abuse believable, then we're asking that [Mother] be named as the sole managing conservator of [the child].

Father did not object to Mother's request for a trial amendment, and the trial court did not comment on the request.

During the trial, both parties testified as to what transpired on the night Father was arrested. Father, testifying first, described Mother as the aggressor, saying she "slapped

4

[him] in the face." Father acknowledged that Mother fell that night, but said it was because she tripped over her dog, not because of anything he did to her. During her testimony, Mother disputed Father's version of events. Mother said Father was "drunk" and that he pushed her out the front door, causing her to fall backwards onto the porch. During his cross examination of Mother, Father introduced, and the trial court admitted, a signed statement by Mother in which she described the incident as nothing more than an argument and says that the police "manipulated" her into writing a statement that night. On redirect, Mother alleged that Father "pressured" her into signing the statement.

Father also testified that he had never been accused of physical violence by any of his prior romantic partners. Father called four witnesses who corroborated his claim that he is not a violent person. A former girlfriend testified that she had known Father since 2009 and that he was not violent during their relationship or in the time since: "In the entire time I've known [Father], he has never been violent. I've never seen him violent." His mother and two friends each testified similarly, saying they had never known Father to be violent and had never heard of any other female accusing him of violence.

In addition to the night Father was arrested, Mother testified extensively about numerous other incidents of alleged physical and verbal abuse, often in graphic detail. She accused him of slapping, hitting, and choking her, even while she was pregnant. Mother called two witnesses who testified to seeing bruising on Mother's arm. Mother also described Father as controlling and said that one night, after she refused his sexual advances, he forced her into a dog kennel.

5

Father did not object to any of this evidence. Instead, he challenged Mother's credibility. For example, while being cross examined, Mother admitted that she had previously lied to Father about a previous sexual encounter with a coworker. Instead of admitting that the encounter was consensual, Mother had told Father that the coworker had forced himself on her. Mother said that Father wanted to know details about her sexual history, and she believed that this version of events would be easier for Father to accept. Father also pointed out that Mother previously failed to disclose many of the incidents she was now testifying about at trial:

[Attorney]:    Okay. Now, you've made numerous allegations here on the stand about abuse that you testify [Father] perpetrated against you.

[Mother]:    Yes.

[Attorney]:    And some of this I'm hearing for the first time on the stand, because you didn't list any of these instances in your discovery responses, did you?

[Mother]:    No. But I didn't see questions that specifically prompted that.

[Attorney]:    When you saw me ask you about why you believed [Father] should not be appointed the primary joint managing conservator –

[Mother]:    And I focused on [the child].

[Attorney]:    Okay. And you didn't think it was important if he, in fact, locked you in a dog kennel, you did not think that that was one of the most important reasons that he should not have custody of your son?

[Mother]:    I am a very technical and like literal person. This is my first go-around of this, and I –

[Attorney]:    I know this is upsetting to you. Let's go back to the night before Thanksgiving.

Due to that nature of their relationship, Mother testified that co-parenting had proven difficult. In particular, Mother said Father was uncooperative and argumentative and that Father would often argue with her in front of the child. Father agreed that co-parenting was not going smoothly, but he attributed that to Mother's failure to involve him in parenting decisions. He also described Mother as controlling and argumentative.

After both sides rested and waived closing arguments, the trial judge said, "I think I have a pretty good grasp for what's going on" and that she would be back in ten minutes with a ruling. In pronouncing her judgment in open court, the trial judge made a "finding [of] a history of family violence." The court also found that, regardless of the family-violence finding, when considering factors such as "the benefits to the child, cooperative decision-making, geographical proximity, ability to promote [a] positive relationship [between the child and the other parent,] and prior childrearing participation," the presumption in favor of naming the parties joint managing conservators had been rebutted "and it is not in the child's best interest that [Mother and Father] be named joint managing conservators." *See* TEX. FAM. CODE ANN. § 153.134(a)(1)–(5). The court appointed Mother sole managing conservator, awarded Father standard possession and access, and ordered the parties to only communicate through OurFamilyWizard.[2] The court also announced that exchanges would occur at a facility in Bryan, Texas known as "Fort Ringo." Father would be required to leave the child at the facility at 5:30 p.m., and

---

[2] OurFamilyWizard is an application designed to aid communication and avoid conflict between conservators.

7

Mother would be required to pick the child up at 5:45 p.m. This, the court explained, was designed to ensure that the parties did not see each other during exchanges.

**D.    Judgment**

The trial court signed the judgment on November 1, 2019. On the first page, the judgment states that the case was heard on August 27, 2019, "[a] jury was waived, and all questions of fact and of law were submitted to the Court." On the last page, the judgment states that the trial court's decision was "judicially PRONOUNCED AND RENDERED in court . . . on August 27, 2019."

The judgment appoints Mother as sole managing conservator, Father as possessory conservator, and grants Father a standard possession and access order. The judgment also included additional findings and orders regarding possession:

4.    Additional Terms of Possession

The Court finds that [Father] has a history or pattern of committing family violence during the two-year period preceding the filing of this suit or during the pendency of this suit. The Court further finds that awarding [Father] access to the child would not endanger the child's physical health or emotional welfare and would be in the best interest of the child. IT IS THEREFORE ORDERED as follows:

a.    All exchanges of possession of the child in Brazos County shall occur at Fort Ringo located at 1200 Briarcrest, Suite #2345, Bryan, Texas 77802. [Father] is to return the child to Fort Ringo at 5:30 p.m. on the last day of his possession and [Mother] shall pick the child up from Fort Ringo at 5:45 p.m. on the same day. The parties are not to be in the same location at the same time.

b.    [Father] shall attend a Battering Program within 48 hours of August 27, 2019 and continue the program until it is completed. He shall provide proof of such attendance to the Court.

8

**E.      Post Judgment Proceedings**

On November 20, 2019, Father requested findings of fact and conclusions of law. The trial court issued its findings and conclusions on December 11, 2019, including, among others, a finding that Father has a history of family violence and a conclusion that it would be in the best interest of the child to appoint Mother sole managing conservator. There were no findings consistent with the trial court's alternative holding that the presumption in favor of joint managing conservatorship had been rebutted under the factors listed in Texas Family Code § 153.134(a)(1)-(5).

On December 2, 2019, Father filed a motion to modify the judgment, contending that Mother's oral trial amendments were ineffective because she failed to amend her pleadings. According to Father, without a written amendment, the Court had no basis to make its family-violence finding or render the orders that flowed from that finding. The motion was overruled by operation of law, and this appeal ensued.

## II.      STANDARD OF REVIEW & APPLICABLE LAW

**A.      Conservatorship**

A managing conservator is a party appointed by court order with parental rights and duties to a child. *See* TEX. FAM. CODE ANN. §§ 101.016, .019. The trial court is afforded great discretion when determining conservatorship, and we review the trial court's decision for an abuse of discretion. *Gillespie v. Gillespie*, 644 S.WW.2d 449, 451 (Tex. 1982); *In re T.J.S.*, 71 S.W.3d 452, 458 (Tex. App.—Waco 2002, pet. denied). Generally, a trial court abuses its discretion when its decision is arbitrary, unreasonable, or without reference to any guiding rules or principles. *In re T.J.S.*, 71 S.W.3d at 458

9

(citing *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990)). A trial court also abuses its discretion when it clearly fails to correctly analyze or apply the law. *In re Cerberus Cap. Mgmt.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (citing *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992)).

Unless a court finds that it would significantly impair the child's physical health or emotional development, "a parent shall be appointed sole managing conservator or both parents shall be appointed as joint managing conservators of the child." Tᴇх. Fᴀᴍ. Cᴏᴅᴇ Aɴɴ. § 153.131(a). The law presumes that appointing both parents as joint managing conservators is in the best interest of the child. *Id.* § 153.131(b). This presumption ceases when the trial court makes a finding of a history of family violence. *Id.* The family code defines "family violence" as "an act by a member of a family or household against another member of the family or household against another member of the family or household that is intended to result in physical harm, bodily injury, assault, or sexual assault . . . ." *Id.* §§ 71.004(1), 101.0125.

When determining conservatorship, "the court *shall consider* evidence of the intentional use of abusive physical force . . . by a party directed against . . . a parent of the child . . . committed within a two-year period preceding the filing of the suit or during the pendency of the suit." *Id.* § 153.004(a) (emphasis added). When a trial court makes a finding of a history of family violence, "[t]he court may not appoint joint managing conservators." *Id.* § 153.004(b). Instead, the non-violent parent will typically be appointed the sole managing conservator. *See Lewelling v. Lewelling*, 796 S.W.2d 164, 168 (Tex. 1990).

10

**B.    Trial Amendments**

Generally, parties seeking affirmative relief are restricted in their recovery to the claims asserted in their pleadings. TEX. R. CIV. P. 301 (requiring the judgment to "conform to the pleadings"). This ensures that parties have fair notice of the claims at issue. *See id.* R. 47(a) (requiring pleadings to contain "a short statement of the cause of action sufficient to give fair notice of the claim involved").

However, an unpleaded issue may be deemed tried by consent when the evidence on the issue is developed without objection under circumstances indicating both parties understood the issue was being contested. *Ingram v. Deere*, 288 S.W.3d 886, 893 (Tex. 2009); *see* TEX. R. CIV. P. 67 ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."). "If issues are tried by implied consent, the filing of trial amendments should be freely permitted." *Allstate Prop. & Cas. Ins. v. Gutierrez*, 281 S.W.3d 535, 540 (Tex. App.—El Paso 2008, no pet.) (citing *Shaw v. Tyler Bank & Tr. Co.*, 285 S.W.2d 782, 790 (Tex. App.—Texarkana 1956, writ ref'd n.r.e.)).

"A trial amendment must be filed as a written pleading; an oral statement at trial is insufficient to modify the pleadings." *City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 73 (Tex. 2000) (citing TEX. R. CIV. P. 66, 67). But "a party waives its complaint of any defect, omission, or fault in the pleadings if the party fails to specifically object before the submission of the charge to the jury." *Id.* (citing TEX. R. CIV. P. 274, TEX. R. APP. P. 33.1).

### III.    JUDGMENT CONFORMING TO THE PLEADINGS

By his first issue, Father complains that because the judgment does not conform

11

to the pleadings, it should be modified to reflect the relief requested by the parties in their pleadings (i.e., appoint the parties as joint managing conservators, omit the finding of family violence, and omit any orders based on that finding). As a threshold matter, we must first decide whether Father preserved this issue for our review.

## A.      Waiver

Father waived his complaint about the pleading defect because he tried the issue by implied consent and then waited until *after* the case had been decided to raise his objection.

### 1.      Trial by Consent

"When both parties present evidence on an issue and the issue is developed during trial without objection, any defects in the pleadings are cured at trial, and the defects are waived." *Ingram*, 288 S.W.3d at 893; *see* TEX. R. CIV. P. 67. Here, the record establishes Father anticipated that Mother's unpleaded accusations of family violence would become a central issue in the trial, and he prepared his trial strategy accordingly.

As Mother points out, Father raised the issue of family violence first by addressing it in his opening statement: "[Mother] has made allegations against [Father] of being physically violent to her" in the past and "now that this litigation is pending[,] . . . she's making them once again[,] and they're now larger than they were even initially." But Father said these allegations were not credible because the evidence would show that "[Mother] has a history of difficult interpersonal relationships," she previously retracted her allegations against him, and Father has no prior history of being violent.

When Mother then announced in her opening statement that she was seeking a

12

trial amendment based on Father's history of family violence, Father did not object. On the contrary, consistent with his opening statement, Father proceeded to offer a significant amount of evidence designed to preemptively rebut Mother's allegations, including the testimony of a former girlfriend who primarily testified that Father had never been violent towards her. In total, Father called four witnesses, excluding himself, who testified that he is not a violent person. During his testimony, Father disputed that he assaulted Mother on the night he was arrested and accused her of making false allegations against men in the past.

Mother's subsequent testimony about Father's history of family violence was extensive and highly prejudicial. And even though some of the incidents she testified about were apparently not disclosed during discovery, Father failed to object to her testimony on any basis. *See* TEX. R. CIV. P. 193.6(a) ("A party who fails to make, amend, or supplement a discovery response in a timely manner many not introduce in evidence the material or information that was not timely disclosed . . . ."); *State Bar of Tex. v. Kilpatrick*, 874 S.W.2d 656, 658 (Tex. 1994) (recognizing that evidence may be "objected to a trial on the ground that it is not within the issues made by the pleadings"). Rather, he allowed the issue of family violence and sole managing conservatorship to be submitted to the trial court without objection. Because both parties presented extensive evidence on this issue and allowed it to be developed during trial without objection, any defect in Mother's pleading was cured at trial, and Father waived any complaint about the defect. *See Ingram*, 288 S.W.3d at 893; TEX. R. CIV. P. 67.

13

## 2. Untimely Objection

Nevertheless, Father contends that he did not try the issue by consent because he filed a post-judgment objection. According to Father, his objection was "timely" because it "gave the associate judge sufficient time to correct her error." We disagree.

If this case had been tried to a jury, then Father's post-judgment objection would clearly have been out of time. *See* TEX. R. CIV. P. 274 (requiring objections to pleading defects to be made before the charge is submitted to the jury); *Zimlich*, 29 S.W.3d at 73 (concluding that objections not raised in accordance with Rule 274 are waived). The question we must decide, then, is whether trying a case to the bench relieves a party from the obligation of objecting to a pleading defect before the case is submitted to the court. Father has not pointed us to any caselaw supporting his position or articulated a principled reason to deviate from the general rule that a pleading defect must be objected to before the case is submitted. When we consider the circumstances of this case in light of the rules governing trial amendments, we cannot reach such a conclusion.

If this was "a classic trial by ambush," as Father now complains on appeal, then the appropriate time to object was when Mother asked for a trial amendment during her opening statement. This would have permitted the trial court to decide, before the introduction of any prejudicial evidence, whether allowing the amendment was mandatory or discretionary, and if the amendment was not mandatory, to exercise its discretion in deciding whether to allow the amendment regardless of any prejudice to Father. *See* TEX. R. CIV. P. 66 (providing that "if during the trial[,] any defect, fault or omission in a pleading, either of form or substance, is called to the attention of the court, the court may allow the

14

pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the allowance of such amendment would prejudice him in maintaining his action or defense upon the merits"); *Kilpatrick*, 87 S.W.2d at 658 ("If the trial amendment is not mandatory, then the decision to permit or deny the amendment rests within the sound discretion of the trial court."). Furthermore, the trial court could have postponed the trial if it determined that doing so would strike the appropriate balance between reaching the merits of the case and providing fair notice to Father. *See* TEX. R. CIV. P. 66 ("The court may grant a postponement to enable the objecting party to meet such evidence.").

Of course, a party may instead elect to try an issue by consent, just as we have determined that Father did here. *See id.* R. 67. If not, the Supreme Court of Texas has been clear, the time to object is "during trial" (i.e., when the trial proceedings can actually be affected); otherwise, any complaint about a pleading defect is waived. *Ingram*, 288 S.W.3d at 893; *see also In re J.C.J.*, No. 05-14-01449-CV, 2016 WL 345942, at *3, 8 (Tex. App.—Dallas Jan. 28, 2016, no pet.) (mem. op.) (concluding objection to request for trial amendment during bench trial was timely where mother objected at the time father made the request); *Kreighbaum v. Lester*, No. 05-06-01333-CV, 2007 WL 1829729, at *3 (Tex. App.—Dallas June 27, 2007, no pet.) (mem. op.) ("[A]ppellee objected to the oral pleading in his response to appellants' motion for attorney's fees. At the time appellee objected, the trial court had not taken the attorney's fees issue under advisement. We conclude appellee's objection was timely."). Simply put, a party cannot try an issue by consent, and then take back that consent once he knows the issue has been decided

15

against him. Therefore, we conclude that Father's post-judgment objection was untimely.

## B.    Best Interest of the Child

But even if Father's post-judgment objection was timely, "[t]he best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." TEX. FAM. CODE ANN. § 153.002. With this in mind, the supreme court stated decades ago that "[t]echnical rules of practice and pleadings are of little importance in determining issues concerning the custody of children," *Leithold v. Plass*, 413 S.W.2d 698, 701 (Tex. 1967), and courts of appeals have continued to apply that rule in the years since. *See, e.g.*, *In re Marriage of Christensen*, 570 S.W.3d 933, 940 (Tex. App.—Texarkana 2019, no pet.) ("[I]n cases affecting the parent/child relationship, when the best interest of the child is always the overriding consideration, technical rules of pleading and practice are of little importance, and fair notice is afforded when the pleadings generally invoke the court's jurisdiction over custody and control of the children." (quoting *In re Macalik*, 13 S.W.3d 43, 45 (Tex. App.—Texarkana 1999, no pet.))); *Messier v. Messier*, 389 S.W.3d 904, 907 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("In child custody cases, where the best interests of the child are the paramount concern, technical pleading rules are of reduced significance."); *see also Peterson v. Kirk*, No. 03-02-00202-CV, 2002 WL 31833710, at *4 (Tex. App.—Austin Dec. 19, 2002, pet. denied) (mem. op.) ("The paramount concern in such cases is the best interest of the child, and the formalities of the procedural rules of pleading will not be used to defeat that interest.").

This is especially true in cases such as this where the parties have filed an original

16

SAPCR. Through their pleadings, both parties invoked the trial court's general jurisdiction to determine the issue of conservatorship, and although both parties requested that they be appointed as joint managing conservators, it was within the trial court's discretion to determine if that arrangement was in the child's best interest. *See* TEX. FAM. CODE ANN. § 153.134(a) ("If a written agreed parenting plan is not filed with the court, the court may render an order appointing the parents joint managing conservators only if the appointment is in the best interest of the child, considering the following factors . . . ."). In other words, merely requesting joint managing conservatorship in a pleading, even by both parents, does not entitle the parties to that relief. It may be the most likely outcome, given the statutory presumption in favor of joint managing conservatorship, but it is not guaranteed. *See id.* § 153.131(a) (requiring generally the appointment of either one parent as sole managing conservator "or" both parents as joint managing conservators). Instead, the issue of conservatorship must always turn on a determination of the child's best interest. *See id.* §§ 153.002, .134(a). Thus, by placing this determination in the trial court's hands, Father had fair notice that Mother may be appointed sole managing conservator if the trial court determined that doing so was in the child's best interest. *See In re Marriage of Christensen*, 570 S.W.3d at 940. Particularly in this case where both parents agreed that co-parenting (i.e., joint managing conservatorship) had proven problematic due to the volatile nature of their relationship. *See* TEX. FAM. CODE ANN. § 153.134(a)(1)–(3).

Regardless, the family code mandated that the trial court consider Mother's evidence of family violence and prohibited the court from appointing Mother and Father

17

as joint managing conservators if it found the evidence credible. *See id.* § 153.004(a), (b). The trial court found that evidence credible, and Father has not challenged the sufficiency of the evidence on appeal. Nonetheless, Father asks us to disregard that evidence even though he never objected to it and the family code commands otherwise. *See id.* § 153.004(a). We decline to elevate a technical rule of pleading above the trial court's statutory duties as set out in the family code. Accordingly, the trial court did not abuse its discretion by making a finding that Father has a history of family violence, appointing Mother as sole managing conservator, and making other orders related to its finding. We overrule Father's first issue.

### IV.     ORDER REGARDING EXCHANGES

By his second issue, Father complains that the trial court abused its discretion by ordering the parents to leave J.M.M. at a facility that is allegedly not licensed as a child-care provider during exchanges.

The trial court heard testimony from both parties about incidents that had occurred during exchanges. Father acknowledged that during one exchange, the parties had a disagreement, and after Mother threatened to call the police and left in her vehicle, Father followed her in his vehicle for a time even though he had already taken possession of the child. He also said that Mother "gets verbal, just verbally upset" during exchanges. Father agreed that it would be in the child's best interest if he and Mother had minimal contact during exchanges.

Mother testified that exchanges "were lasting anywhere between 45 minutes and an hour, sometimes an hour-and-a-half" because of arguments the two were having. She

18

said Father would prevent her from leaving when she was picking up the child and would threaten to keep the child for periods beyond those provided for in the temporary orders. She also said they had tried conducting exchanges at the local police station's safe exchange zone, and although Father was less hostile, he was still argumentative.

In announcing its decision to order the exchanges to take place at "Fort Ringo" with no overlap between the parties, the court explained that this arrangement was necessary because "y'all are still yelling at each other and you're still causing all this to your one-year-old child." The trial court added, "You realize that if your son is in the house, in the car, in the yard while y'all are fussing at each other, he knows it." To ensure that the parties had no contact during exchanges, the trial court ordered Father to drop the child off at the facility fifteen minutes before Mother was scheduled to pick up the child. The court also mentioned that the facility has cameras, which would serve as a deterrent to any poor behavior between the parties.

In his motion to reform, modify, or correct the judgment, Father stated that "Fort Ringo is not a licensed child-care facility" and that "[b]y granting Fort Ringo the right to care for the child in the absence of either of his parents, the final judgment turns Fort Ringo into an unlicensed child-care facility in violation of state law." Father asked instead that "all exchanges in Brazos County to take place at the College Station Safe Exchange Zone."

As support for his claim that Fort Ringo is not a licensed child-care facility, Father cited to the facility's website, which describes the facility as a "Supervised Visitation Center" and a "Company of Ringo's Detective Service." According to Father's unsworn

19

motion, "generally, a 'detective center' or a 'supervised visitation center' is not a child-care facility that is either licensed or equipped to care for children in the absence of either parent."

"When the facts are undisputed, a trial court abuses its discretion by incorrectly analyzing the law or by misapplying the law to the undisputed facts." *Lawson v. Archer*, 267 S.W.3d 376, 383 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Moreover, "[w]hat might otherwise be a question of fact becomes one of law when the fact is not in dispute or is conclusively established." *Reliance Nat'l Indem. Co. v. Advance'd Temps., Inc.*, 227 S.W.3d 46, 50 (Tex. 2007). Here, outside of Father's unsworn assumption about the facility's credentials, there is no evidence in the record that conclusively establishes that Fort Ringo is not a licensed child-care facility.

On the other hand, the undisputed evidence presented at trial was that the parties could not conduct face-to-face exchanges, including at the local police station's safe exchange zone, without compromising the child's best interest. Accordingly, the trial court fashioned a remedy to eliminate that possibility by ordering the exchanges to occur in a protective setting with no overlap by the parties. *See* TEX. FAM. CODE ANN. § 153.004(d-1)(2)(B) (providing that when there is a finding of a history of family violence, the trial court may award possession to the offending parent if, among other requirements, the trial court "renders a possession order that is designed to protect the safety and well-being of the child and any other person who has been a victim of family violence committed by the parent and that may include a requirement that . . . the exchange of possession of the child occur in a protective setting"). Based on the record before us, we cannot say the

20

trial court abused its considerable discretion on the matter. *See Gillespie*, 644 S.W.2d at 451; *In re T.J.S.*, 71 S.W.3d at 458. We overrule Father's second issue.

## V.   CONCLUSION

We affirm the trial court's judgment.


GINA M. BENAVIDES
Justice

Delivered and filed on the
21st day of October, 2021.