

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-18-00070-CV

IN THE MATTER OF THE MARRIAGE OF
NIKKI LANELLE CHRISTENSEN AND DEAN CHRISTENSEN, JR.,
AND IN THE INTEREST OF W.C., A CHILD

On Appeal from the 5th District Court
Bowie County, Texas
Trial Court No. 17D0769-005

Before Morriss, C.J., Burgess and Stevens, JJ.
Opinion by Justice Burgess

# O P I N I O N

This is an appeal from a final decree of divorce between appellant Nikki Lanelle Christensen and appellee Dean Christensen, Jr. Specifically, Nikki challenges the divorce decree's geographical residency restriction requiring their child, W.C., to reside in Bowie County, Texas. Because we hold that there was no error in the divorce decree, we affirm the trial court's judgment.

## I.      Background

After almost eight years of marriage to Dean, on July 5, 2017, Nikki filed an original petition for divorce. In her petition, Nikki asked the trial court to appoint her as joint managing conservator of W.C.,[1] the sole child born during the parties' marriage. She also asked the court to designate her as the conservator who had the exclusive right to designate W.C.'s primary residence. On October 12, 2017, Dean filed an original counterpetition for divorce, and on October 20, 2017, he filed an amended counterpetition for divorce. In his amended counterpetition, Dean averred that both parties should be appointed joint managing conservators, but he asked that he be given the exclusive right to designate W.C.'s primary residence.[2]

Prior to filing for divorce, Nikki and Dean had lived for several years in Atlanta, Texas, which is located in Cass County.[3] During that time, W.C. attended pre-K in Cass County. While

---

[1]We refer to the children by initials in order to protect their privacy. *See* TEX. FAM. CODE ANN. § 109.002(d) (West Supp. 2018).

[2]At the time of W.C.'s birth, Dean had sole custody of his two children from another relationship, G.T. and G.N.

[3]Although the distance between the cities and the counties in which they are located are not included in the record, we may take judicial notice of the locations of "cities, counties, boundaries, dimensions, and distances because geographical facts such as these are easily ascertainable and capable of verifiable certainty." *Butts Retail, Inc. v. Diversifoods, Inc.*, 840 S.W.2d 770, 774 (Tex. App.—Beaumont 1992, writ denied).

Dean and Nikki lived in Atlanta, Dean worked at Red River Army Depot and Nikki worked at Wadley Regional Medical Center,[4] both of which are located in Bowie County. When Nikki and Dean separated, Nikki moved to an area near Wake Village and was living in a three-bedroom, two-bath duplex. Dean moved to a newly purchased, two-bedroom home in New Boston, Texas,[5] with his two older sons, G.T. and G.N. At that time, W.C. was attending Wake Village Elementary School, had been doing very well in school, and had made friends while at school.

During the hearing, however, Nikki testified that she was in the process of moving to Red River County because "[t]hat's where [her] family support is." She stated that she had no family residing in Bowie County. Nikki also explained that she had a new job in Paris, Texas, which is located in Lamar County. She stated that the job she had at Wadley did not pay her enough and that she was "struggling monthly." She stated that her new salary would be twenty thousand dollars a year more than the salary she had been receiving while working at Wadley. According to Nikki, it was approximately sixty miles from Dean's home in Bowie County to her grandmother's home, where she planned to reside in Red River County. Nikki asked the court to designate W.C.'s primary residence within either Bowie or Red River County.

Dean testified that he believed that it was in W.C.'s best interest to remain in Bowie County because "he need[ed] to be with his family." He stated that, in the event the trial court allowed him to move with Nikki to Red River County, he would be unable "to exercise school to school

---

[4]Nikki began working at Wadley in July 2016. She worked from 7:00 a.m. until 7:00 p.m., three days a week. Nikki stated that she was making $20.82 per hour. At the time of the hearing, Nikki had an associate's degree in nursing and was in the process of working on a bachelor's degree in nursing at Baldwin University. She explained that she took classes online and "[had] to participate in discussions and write papers and occasionally do quizzes."

[5]Both Wake Village and New Boston are located in Bowie County.

visitation." According to Dean, he had exercised visitation in accordance with the temporary order "every chance [he got]." He stated that he had possession of W.C. every weekend and some week nights. In Dean's opinion, there were many medical facilities in Texarkana where Nikki could find employment. Dean asked the trial court to award the parties joint managing conservatorship of W.C., with Dean having the right to establish W.C.'s residency in Bowie County.

Following the hearing, the trial court entered a final decree of divorce, ordering, in relevant part, "that the primary residence of [W.C.] shall be Bowie County, Texas, and the parties shall not remove the child from Bowie County, Texas." The divorce decree continued,

> Nikki Lanelle Christensen shall have the exclusive right to designate [W.C.]'s primary residence within Bowie County, Texas. . . . [T]his geographic restriction on the residence of [W.C.] shall be lifted if, at the time Nikki Lanelle Christensen wishes to remove [W.C.] from Bowie County, Texas for the purpose of changing the primary residence of [W.C.], Dean Christensen, Jr.[,] does not reside in Bowie County, Texas.

In addition, the trial court granted Dean extended visitation with W.C., allowing him to have possession of W.C. on the second, fourth, and fifth weekends and on Thursdays from 5:00 p.m. until the beginning of school the following day.

Nikki maintains that her new employment in Paris created a substantial commuting problem. She contends, "The current drive from Wake Village to Paris is approximately one and a half hour each way[,]" "versus the driving distance from [Red River County] to Paris, approximately 24 miles, or a difference of 66 miles." She also maintains that Dean's failure to pay child support further necessitated that she take the higher paying job in Paris.[6] For these

---

[6]On November 13, 2017, the parties entered into an agreed temporary order wherein Dean was ordered to pay Nikki $400.00 per month in child support, with the first payment being due on December 1, 2017. Following the final

reasons, Nikki appeals the trial court's geographical restriction requiring W.C.'s primary residence to remain in Bowie County. Specifically, Nikki contends that there was legally and factually insufficient evidence to support the trial court's imposition of a geographical residency requirement restricting W.C.'s residency to Bowie County.

## II. Standard of Review

An appellate court reviews a trial court's order regarding conservatorship under an abuse of discretion standard. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982). A trial court abuses its discretion when it acts arbitrarily and unreasonably or without reference to any guiding principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). However, "[i]n family law cases, the abuse of discretion standard of review overlaps with traditional standards of review." *In re C.G.L.*, No. 06-13-00068-CV, 2014 WL 887778, at *3 (Tex. App.—Texarkana Mar. 6, 2014, no pet.) (mem. op.) (citing *In re A.B.P.*, 291 S.W.3d 91, 95 (Tex. App.—Dallas 2009, no pet.); *In re Matter of Marriage of Hale*, 975 S.W.2d 694, 697 (Tex. App. —Texarkana 1998, no pet.); *Doyle v. Doyle*, 955 S.W.2d 478, 479 (Tex. App.—Austin 1997, no pet.)). Thus, "legal and factual insufficiency are not independent grounds of reversible error, but instead are factors relevant to our assessment of whether the trial court abused its discretion." *Id*. (citing *A.B.P.*, 291 S.W.3d at 95; *Scoggins v. Trevino*, 200 S.W.3d 832, 836 (Tex. App.—Corpus Christi 2006, no pet.); *Doyle*, 955 S.W.2d at 479. Of course, in making our evaluation, we recognize that "[t]he trial court is in the best position to observe the demeanor and personalities of

---

divorce hearing, the trial court found that Dean was in contempt of court for failure to make child support payments for the months of December 2017 and January, February, March, April, and May 2018. The trial court sentenced Dean to 120 days in jail, but suspended his sentence and placed him on community supervision for a period of five years. The record also shows that, on June 7, 2018, Dean paid $2,000.00 in child support to Nikki.

the witnesses and can 'feel' the forces, powers, and influences that cannot be discerned by merely reading the record." *Bates v. Tesar*, 81 S.W.3d 411, 424 (Tex. App.—El Paso 2002, no pet.). Moreover, a trial court does not abuse its discretion if there is some evidence of a probative and substantive character to support its decision. *Id.* at 424–25; *Jenkins v. Jenkins*, 16 S.W.3d 473, 477 (Tex. App.—El Paso 2000, no pet.). Accordingly, we consider whether the trial court had sufficient evidence upon which to exercise its discretion and whether it erred in exercising that discretion. *Moroch v. Collins*, 174 S.W.3d 849, 857 (Tex. App.—Dallas 2005, pet. denied); *see also Cisneros v. Dingbaum*, 224 S.W.3d 245, 258 (Tex. App.—El. Paso 2005, no pet.).

## III. Discussion

### A. Sufficiency of the Evidence to Support a Geographical Residency Restriction

It is well settled that, when a trial court appoints joint managing conservators, it must designate the conservator who has the exclusive right to determine the primary residence of the child and must either establish a geographic area within which the conservator shall maintain the child's primary residence or specify that there are no geographic restrictions. TEX. FAM. CODE ANN. § 153.134(b)(1) (West 2014). Moreover, "[t]he best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." TEX. FAM. CODE. ANN. § 153.002 (West 2014). The trial court has wide latitude in determining what is in the best interest of the child. *Gillespie*, 644 S.W.2d at 451.

6

Furthermore, these types of cases are "intensely fact driven, which is why courts have developed best-interest tests that consider and balance numerous factors."[7] *Lenz v. Lenz*, 79 S.W.3d 10, 19 (Tex. 2002). The Texas Supreme Court has instructed courts to consider the public policies outlined in Section 153.001(a) of the Texas Family Code. *Id.* at 14. Section 153.001 states that the public policy of Texas is to:

> (1)  assure that children will have frequent and continuing contact with parents who have shown an ability to act in the best interest of the child;
>
> (2)  provide a safe, stable, and nonviolent environment for the child; and
>
> (3)  encourage parents to share in the rights and duties of raising their child after the parents have separated or dissolved their marriage.

TEX. FAM. CODE ANN. § 153.001(a)(1)–(3) (West 2014).

In *Lenz*, the court set out additional factors that may be relevant to the determination of a child's best interest after a parental relocation. Those factors include (1) the reasons for and against the move, (2) the education, health, and leisure opportunities afforded by the move, (3) the accommodation of the child's special needs or talents, (4) the effect on extended family relationships, (5) the effect on visitation and communication with the noncustodial parent, (6) the noncustodial parent's ability to relocate, and (7) the child's age. *Lenz*, 79 S.W.3d at 15–16. In addition, a court may consider the *Holley* factors relevant to a best-interest finding, including (1) the child's desires, (2) the child's current and future physical and emotional needs, (3) any physical or emotional danger to the child in the present and the future, (4) the parental abilities of

---

[7]Section 153.134 of the Texas Family Code is silent as to the factors a trial court should consider when it determines whether a domicile restriction is in the best interest of the child. *See* TEX. FAM. CODE ANN. § 153.134 (West 2014).

the individuals involved, (5) the programs available to those individuals to promote the child's best interest, (6) the plans for the child by the individuals, (7) the stability of the home, (8) acts or omissions by a parent tending to show that the existing parent-child relationship is inappropriate, and (9) any excuses for the acts or omissions of a parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

In this case, Nikki asked the trial court to designate W.C.'s primary residence as either Bowie County or Red River County, thereby conceding that Bowie County would be an acceptable choice for W.C.'s residency. In addition, W.C. had been attending elementary school in Bowie County and had been excelling in school and forming new friendships with other children his age. Moreover, W.C. has family located in Bowie County, including his two half-brothers, G.T. and G.N. Dean also stated that he would be unable to exercise his weekday visitations if Nikki were allowed to relocate to Red River County. Further, Dean had been working for a substantial period of time in Bowie County. While Nikki's commute to work would be shorter if she and W.C. were allowed to reside in Red River County, that fact is not determinative of whether it was in W.C.'s best interest to relocate to that county. For these reasons, we find that there was legally and factually sufficient evidence for the trial court to determine that a Bowie County geographical residency restriction was in W.C.'s best interest.

We overrule Nikki's first point of error.

### B. The Trial Court's Sua Sponte Imposition of a Geographical Residency Restriction

Nikki also contends that the trial court erred when it sua sponte imposed a geographical restriction on W.C.'s residency. Rule 301 of the Texas Rules of Civil Procedure provides, "The

judgment of the court shall conform to the pleadings, the nature of the case proved and the verdict, if any, and shall be so framed as to give the party all the relief to which he may be entitled either in law or equity." TEX. R. CIV. P. 301.[8]  A judgment, absent issues tried by consent, must conform to the pleadings. *State v. Estate of Brown*, 802 S.W.2d 898, 900 (Tex. App.—San Antonio 1991, no writ).  Relief, therefore, may not be granted in the absence of pleadings to support that relief. *Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 813 (Tex. 1983).

While a trial court may not grant relief to a party in the absence of pleadings to support such relief, pleadings may be liberally construed to support the judgment. *Frost v. Sun Oil Co. (Delaware)*, 560 S.W.2d 467, 473 (Tex. Civ. App.—Houston [1st Dist.] 1977, no writ).  To determine whether a claim was pled, the court must find those pleadings adequate to state, "with reasonable certainty" and without reference to information from another source, "the relief sought with sufficient information upon which to base a judgment." *Stoner v. Thompson*, 578 S.W.2d 679, 683 (Tex. 1979).

In cases affecting the parent-child relationship, however, the pleading requirements are of lesser importance. *See Leithold v. Plass*, 413 S.W.2d 698, 701 (Tex. 1967).  In *Leithold*, the petitioner sought a modification of the final decree of divorce to give him custody and control of the child during the summer months.  The Texas Supreme Court held that the petitioner's pleading was sufficient to support a judgment for lesser relief in the nature of modified visitation rights with permanent custody as previously decreed. *Id*.  The court explained,

---

[8]"There are sizable exceptions" to the concept that a judgment must conform to the pleadings, "most of which have to do with the idea that a matter may be tried by consent." *State for the Protection of Cockerham v. Cockerham*, 218 S.W.3d 298, 304 (Tex. App.—Texarkana 2007, no pet.).

It is beside the point that . . . the trial court, whether erroneously or not, construed the pleadings of petitioner as seeking only a modification of visitation rights; the point is that once the child is brought under its jurisdiction by suit and pleading cast in terms of custody and control, it becomes the duty of the court in the exercise of its equitable powers to make proper dispositions of all matters comprehended thereby in a manner supported by the evidence.

*Id.*

This Court addressed the issue of pleading requirements in *In re Macalik*, 13 S.W.3d 43 (Tex. App.—Texarkana 1999, no pet.). In *Macalik*, Thompson claimed that specific modifications in the final order must have been requested in a pleading in order to provide her with notice of the controverted issues to be decided and to afford her due process. We recognized that, "in cases affecting the parent/child relationship, when the best interest of the child is always the overriding consideration, technical rules of pleading and practice are of little importance, and fair notice is afforded when the pleadings generally invoke the court's jurisdiction over custody and control of the children." *Id.* at 45 (citing *Leithold*, 413 S.W.2d at 701).

In Dean's amended counterpetition for divorce, Dean stated, in part, as follows: "Counterpetitioner and Counterrespondent, on final hearing, should be appointed joint managing conservators, with all the rights and duties of a parent conservator. Counterpetitioner should be designated as the conservator who has the exclusive right to designate the primary residency of the child." Thus, Dean asked the trial court to determine the parties' rights and duties related to conservatorship over W.C. Therefore, his request necessarily invoked the jurisdiction of the trial court over matters of custody and control, instilling the trial court with "decretal powers" over W.C.'s geographic residence. *See Leithold*, 413 S.W.2d at 701 ("[A] suit properly invoking the

10

jurisdiction of a court with respect to custody and control of a minor child vests that court with decretal powers in all relevant custody, control, possession and visitation matters . . . .").[9]

Because the pleadings were sufficient to support the trial court's judgment, we overrule Nikki's second point of error.

## IV. Conclusion

We affirm the judgment of the trial court.


Ralph K. Burgess
Justice

Date Submitted:     January 8, 2019
Date Decided:       February 6, 2019

---

[9]In her brief, Nikki, citing *In re P.M.G.*, 405 S.W.3d 406 (Tex. App.—Texarkana 2013, no pet.), states that we have previously "concluded that a general request to address conservatorship invoked the trial court's jurisdiction and imbued the trial court with 'decretal power' which included a geographic restriction." However, she asks that we reconsider that ruling in light of recent cases from the Houston Fourteen Court of Appeals and the Amarillo Court of Appeals holding that a mere request for change of conservatorship was not sufficient to grant the trial court authority to impose a geographic restriction. *See Flowers v. Flowers*, 407 S.W.3d 452 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *Gomez v. Rangel*, No. 07-13-00070-CV, 2014 WL 4441379 (Tex. App.—Amarillo Sept. 8, 2014, no pet.) (mem. op.). Nevertheless, *P.M.G.*, *Flower*s, and *Gomez*, each involved motions to modify suit affecting parent-child relationship (SAPCR) orders, not original SAPCR proceedings. In original SAPCR proceedings, Section 153.134(b) of the Texas Family Code specifically requires the trial court to "(1) designate the conservator who has the exclusive right to determine the primary residence of the child" and it allows the trial court to "(A) establish, until modified by further order, a geographic area within which the conservator shall maintain the child's primary residence . . . ." TEX. FAM. CODE ANN. § 153.134(b)(1)(A). Therefore, in original SAPCR proceedings, a general request for determination of conservatorship necessarily imbues the trial court with discretion to impose a geographical restriction. Because this case is an original SAPCR proceeding, we decline the invitation to reconsider our previous holding in *P.M.G.*

11