

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-22-00029-CV

---

IN THE INTEREST OF B.B., A CHILD

---

On Appeal from the County Court at Law No. 2
Gregg County, Texas
Trial Court No. 2019-698-CCL2

---

Before Morriss, C.J., Stevens and van Cleef, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

After Mother admitted that she was using Vicodin, marihuana, and methamphetamine and that she had slapped her two-year-old son, B.B.,[1] while she was under the influence of methamphetamine, the Department of Family and Protective Services sought to establish a safety plan that would allow Mother to go to rehabilitation. Mother identified Cherise and Frank Young as the persons with whom she wanted B.B. to stay while she went to rehabilitation. When Mother failed to go to the agreed treatment center, and the Department lost contact with her, the Department confirmed that the Youngs would care for B.B. and removed him from Mother's care. About one year later, while this case was pending, Mother gave birth to I.D., who was also removed from Mother's care after Mother's admission to having used methamphetamine during her pregnancy.[2] After a final hearing, the trial court appointed the Youngs as sole managing conservators of B.B. and I.D. and appointed Mother possessory conservator of the children.[3]

In her appeal in this case, Mother complains of the final order appointing her possessory conservator of B.B. Mother asserts that the evidence is legally and factually insufficient to support the trial court awarding the Youngs the right to establish the residence of B.B. without imposing a geographical restriction and that the trial court abused its discretion by excluding the

_____

[1]We refer to the minor children by their initials and to their parents by pseudonyms. *See* TEX. R. APP. P. 9.8.

[2]Mother tested positive for methamphetamine three times while pregnant with I.D., who was born on March 31, 2020.

[3]Mother was appointed possessory conservator of B.B. in the trial court's cause number 2019-698-CCL2, which is on appeal in the instant case. She was appointed possessory conservator of I.D. in the trial court's cause number 2020-621-CCL2, which is on appeal to this Court in a companion case bearing our cause number 06-22-00030-CV. The two cases had been consolidated for trial.

testimony of Mother's expert witness. Because we find that (1) there was no abuse of discretion in omitting a geographical restriction and (2) Mother forfeited her complaint about the exclusion of her expert's testimony, we affirm the trial court's judgment.

*(1)      There Was No Abuse of Discretion in Omitting a Geographical Restriction*

In its final order, the trial court found that the appointment of a parent or both parents as managing conservator of B.B. would not be in the child's best interest because the appointment would significantly impair B.B.'s physical health or emotional development.[4]  *See* TEX. FAM. CODE ANN. § 153.131(a).  Instead, the trial court appointed the Youngs as permanent managing conservators of B.B., with the rights and duties specified in Section 153.371 of the Texas Family Code.  "Unless limited by court order, . . . a nonparent . . . appointed managing conservator of the child has the following rights and duties:  . . . the right to designate the primary residence of the child."  TEX. FAM. CODE ANN. § 153.371(10).  The trial court's order did not limit the Youngs' right to designate B.B.'s primary residence.  On appeal, Mother asserts that the evidence is legally and factually insufficient to support the trial court's decision not to impose a geographical restriction on the Youngs' right to designate B.B.'s primary residence.

We review for an abuse of discretion a trial court's order regarding conservatorship. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982).  "A trial court abuses its discretion when it acts arbitrarily and unreasonably or without reference to any guiding principles."  *In re*

---

[4]Mother does not challenge this finding.  To the extent Mother's brief could be construed to challenge the trial court's failure to appoint her managing conservator of B.B., we find that she has forfeited this issue because her brief does not contain citations to appropriate legal authority and does not contain a clear and concise argument applying the facts of this case to such authorities.  *See* TEX. R. APP. P. 38.1(i).  "[A] point of error not adequately supported by either argument or authorities is waived."  *In re A.B.*, 646 S.W.3d 83, 96 (Tex. App.—Texarkana 2022, pet. denied) (quoting *In re N.L.G.*, No. 06-06-00066-CV, 2006 WL 3626956, at *2 (Tex. App.—Texarkana Dec. 14, 2006, pet. denied) (mem. op.)).

*Marriage of Christensen*, 570 S.W.3d 933, 937 (Tex. App.—Texarkana 2019, no pet.) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)). "In family law cases, [however,] the abuse of discretion standard of review overlaps with traditional standards of review." *Id.* (quoting *In re C.G.L.*, No. 06-13-00068-CV, 2014 WL 887778, at *3 (Tex. App.—Texarkana Mar. 6, 2014, no pet.) (mem. op.)). "Thus, 'legal and factual insufficiency are not independent grounds of reversible error, but instead are factors relevant to our assessment of whether the trial court abused its discretion.'" *Id.* (quoting *In re C.G.L.*, 2014 WL 887778 at *3). "[A] trial court does not abuse its discretion if there is some evidence of a probative and substantive character to support its decision." *Id.* (citing *Bates v. Tesar*, 81 S.W.3d 411, 424–25 (Tex. App.—El Paso 2002, no pet.)). "Accordingly, we consider whether the trial court had sufficient evidence on which to exercise its discretion and whether it erred in exercising that discretion." *Id.* at 937–38 (citing *Moroch v. Collins*, 174 S.W.3d 849, 857 (Tex. App.—Dallas 2005, pet. denied)). In our review, "we recognize that '[t]he trial court is in the best position to observe the demeanor and personalities of the witnesses and can 'feel' the forces, powers, and influences that cannot be discerned by merely reading the record.'" *Id.* at 937 (quoting *Bates*, 81 S.W.3d at 424).

Texas courts have consistently held that the trial court is authorized, but not required, to impose a geographical restriction on a sole managing conservator's right to designate the principal residence of the child under her care. *See Guion v. Guion*, 597 S.W.3d 899, 907–08 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (citing cases supporting this principle); *see also* TEX. FAM. CODE ANN. §§ 153.132(1), 153.371(10) (Supp.). "[T]he purpose of imposing a

geographic residency restriction is to ensure those who have rights to possession of the child are able to effectively exercise such rights." *In re S.M.D.*, 329 S.W.3d 8, 22 (Tex. App.—San Antonio 2010, pet. dism'd) (citing *In re A.S.*, 298 S.W.3d 834, 836 (Tex. App.—Amarillo 2009, no pet.)). In the trial court's determination of issues of conservatorship, possession of, and access to the child, "[t]he best interest of the child shall always be the primary consideration." TEX. FAM. CODE ANN. § 153.002. "The trial court has wide latitude in determining what is in the best interest of the child." *Christensen*, 570 S.W.3d at 938 (citing *Gillespie*, 644 S.W.2d at 451).

The Texas Supreme Court has noted that, because "[s]uits affecting the parent-child relationship are intensely fact driven, . . . courts have developed best-interest tests that consider and balance numerous factors." *Lenz v. Lenz*, 79 S.W.3d 10, 19 (Tex. 2002). Because there may be many relevant factors, courts have rejected formulaic tests when considering whether a geographic restriction is in the best interest of the child. *In re M.M.M.*, 307 S.W.3d 846, 850 (Tex. App.—Fort Worth 2010, no pet.) (citing *Lenz*, 79 S.W.3d at 19). Nevertheless, in cases involving conservatorship, possession, and access, we have been instructed to consider the public policies set by the Texas Legislature, which include the objectives to:

(1)     assure that children will have frequent and continuing contact with parents who have shown an ability to act in the best interest of the child;

(2)     provide a safe, stable, and nonviolent environment for the child; and

(3)     encourage parents to share in the rights and duties of raising their child after the parents have separated or dissolved their marriage.

*Lenz*, 79 S.W.3d at 14 (citing TEX. FAM. CODE ANN. § 153.001(a)).

The court in *Lenz* also examined some other factors that may be relevant when considering the best interest of a child when a parent has asked for a modification of a conservatorship order because of a planned move by the custodial parent. As we have previously noted,

> Those factors include (1) the reasons for and against the move, (2) the education, health, and leisure opportunities afforded by the move, (3) the accommodation of the child's special needs or talents, (4) the effect on extended family relationships, (5) the effect on visitation and communication with the noncustodial parent, (6) the noncustodial parent's ability to relocate, and (7) the child's age.

*Christensen*, 570 S.W.3d at 938 (citing *Lenz*, 79 S.W.3d at 15–16).

Mother argues that the trial court abused its discretion in failing to impose a geographic restriction because of the following testimony by Cherise Young:

> Q.    (by Mother's attorney) Could you tell this Court, if the Judge gave conservatorship of the boys to you and your husband, do y'all have plans to relocate?
>
> A.    No.
>
> Q.    Do you have any objection to a geographic restriction being imposed in this case?
>
> A.    I would, but I don't plan to move.
>
> . . . .
>
> Q.    And could you tell the Court, please, . . . where are y'all's relatives from, extended family?
>
> A.    Okay. We have his mom in Wisconsin, we have one brother in Oklahoma, we have one brother in, I believe, Indiana, and one brother in Pennsylvania.
>
> Q.    Has there been any discussion that you and your husband would like to retire to Wisconsin?

A.     We had originally talked about doing this before [B.B.] came into our lives.

Q.     Okay.  So no current plans to --

A.     No.

Q.     -- retire to Wisconsin?  Okay.

Although Cherise's testimony disclaimed any current plans to move out of state, Mother mischaracterizes it as "a proposed move to Wisconsin" and argues that such a move would place a large burden on Mother's ability to maintain a relationship with the child and his teachers and to keep up with his education, that it would inhibit her ability to be involved in the child's extra-curricular activities, and that it would sever the child's relationship with family members in the area.  However, Mother does not cite to any evidence in support of these claims.[5]

Further, the cited testimony was undisputed.  The record also showed that the Youngs facilitated Mother's visits with the children and never interfered with her access to the children.  The Youngs were cordial with Mother, welcomed her, and had her come over for holiday visits.  They also assisted Mother in how to engage with B.B., who was diagnosed with autism, when he would become overstimulated.  In addition, they never prevented Mother from attending B.B.'s therapy sessions.

---

[5]The paucity of evidence regarding this issue at trial is most likely because Mother never requested a geographical restriction be placed on the Youngs' right to designate the primary residence of the children before or during the final hearing.  As the Department points out in its brief, Mother also never objected to the absence of a geographical restriction at either of two post-trial hearings on the trial court's proposed judgment, or in her motion for a new trial.  The Department contends that, because Mother never asked for a geographical restriction, she has waived any challenge to its absence.  However, because the Youngs intervened in this case and sought to be named the sole managing conservators and Section 153.371 of the Texas Family Code gave the court the discretion to determine whether or not to impose a geographical restriction, the issue was before the trial court.  In addition, because this was a civil, nonjury case, Mother's complaints about the legal or factual insufficiency of the evidence supporting the trial court's judgment may be asserted for the first time on appeal.  *See* TEX. R. APP. P. 33.1(d).

On this record,[6] the trial court could have reasonably determined that the Youngs had no plans to move out of state and that, based on their history of cooperation with Mother in ensuring her access to the children, imposing a geographical restriction was not required to ensure Mother's access to the children. *See In re K.S.*, No. 13-19-00416-CV, 2021 WL 317656, at *7 (Tex. App.—Corpus Christi Jan. 28, 2021, no pet.) (mem. op.) (finding on a similar record that there was no evidence to support the trial court's imposition of a geographic restriction on a sole managing conservator's right to designate the primary residence of a child). After reviewing the entire record, we conclude that substantial evidence supported the trial court's judgment giving the Youngs the unrestricted right to designate the primary residence of the children. For that reason, we find that the trial court did not clearly abuse its discretion by not imposing a geographical restriction.[7] We overrule this issue.

*(2)*      *Mother Forfeited Her Complaint About the Exclusion of Her Expert's Testimony*

Mother also complains that the trial court erred in excluding the testimony of her expert witness. Mother offered the expert to testify regarding how certain over-the-counter medicines and a prescription medicine that Mother had been taking could result in a drug test giving a false positive for the presence of methamphetamine. The Department and the Youngs objected to the expert's testimony because Mother failed to disclose in her response to the Department's request

---

[6] Although we have considered the entire record, because this is a memorandum opinion affirming the trial court's conservatorship order, we do not exhaustively detail the evidence. *See* TEX. R. APP. P. 47.4 ("If the issues are settled, the court should write a brief memorandum opinion no longer than necessary to advise the parties of the court's decision and the basic reasons for it."); *In re A.B.*, 437 S.W.3d 498, 507 (Tex. 2014) (holding courts of appeals need not detail the evidence when affirming termination findings).

[7] If the Youngs do move out of state or formulate definite plans to do so, Mother could still seek to modify the trial court's conservatorship order at that time.

8

for disclosures the substance of the expert's testimony and opinions and a brief summary of the bases of his opinions and she failed to provide all documents that were provided to or reviewed by him. *See* TEX. R. CIV. P. 192.3(f). After the trial court reviewed Mother's responses to the request for disclosures,[8] the trial court excluded the testimony because Mother failed to disclose the substance of his opinions and the bases of those opinions.

"To reverse a judgment based on a claimed error in admitting or excluding evidence, a party must show that the error probably resulted in an improper judgment." *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001) (citing TEX. R. APP. P. 61.1); *see* TEX. R. APP. P. 44.1(a)(1). "Typically, a successful challenge to a trial court's evidentiary rulings requires the complaining party to demonstrate that the judgment turns on the particular evidence excluded or admitted." *Id.* (citing *Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex. 2000)).

Although Mother provided an argument in support of her contention that the trial court erred in excluding the testimony, she wholly failed to demonstrate that the trial court's judgment turned on the exclusion of the testimony. Rather, her entire argument regarding harm was that "had the [expected testimony of (Mother's) expert regarding drug testing] been allowed, a different result regarding custody of the child may have been reached by the court." Absent from Mother's brief on this issue was any analysis of what the testimony would have been or how that testimony would have rebutted the Department's expert testimony and overcome the

---

[8]Mother's responses to the request for disclosures are not included in the appellate record.

other testimony of Mother's acts and omissions unrelated to the alleged false-positive drug results.[9]  Also absent were any citations to the record in support of the missing harm analysis.

Our appellate rules require an appellant to make "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i).  A short, conclusory statement does not satisfy this requirement. *Smale v. Williams*, 590 S.W.3d 633, 638 (Tex. App.—Texarkana 2019, no pet.); *In re Marriage of Hudson*, No. 06-18-00011-CV, 2018 WL 4656288, at *4 (Tex. App.—Texarkana Sept. 28, 2018, no pet.).  Further, "it is not the role of this court to conduct harm analysis absent some cogent argument on [Mother]'s part." *Yarbrough v. ELC Energy, LLC*, No. 12-15-00303-CV, 2017 WL 2351357, at *11 (Tex. App.—Tyler May 31, 2017, no pet.) (mem. op.).  As a result, since Mother has failed to brief whether the exclusion of the evidence was harmful, she has waived this issue. *Id.*; *see V. N. G. v. Tex. Dep't of Family & Protective Servs.*, No. 03-18-00329-CV, 2018 WL 5023960, at *3 (Tex. App.—Austin Oct. 17, 2018, no pet.) (mem. op.) (finding inadequate briefing when brief did not explain legal significance of purported error, conduct any harm analysis, or explain how alleged error could entitle appellant to reversal or any other relief).  We overrule this issue.

---

[9]Mother admitted that drug tests taken on April 30, 2019, May 31, 2019, August 9, 2019, and November 18, 2019, which showed positive results for methamphetamine, were accurate.  She claimed that drug tests taken on February 28, 2020, October 23, 2020, March 22, 2021, April 20, 2021, July 14, 2021, and September 13, 2021, which showed positive results for methamphetamine and other illegal substantives, were false positives.

For the reasons stated, we affirm the trial court's judgment.


                              Josh R. Morriss III
                              Chief Justice

Date Submitted:    October 5, 2022
Date Decided:      October 6, 2022