# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-24-00485-CV

**Scott Carter Gillette, Appellant**

**v.**

**Stephanie Lee Devore Gillette, Appellee**

### FROM THE 169TH DISTRICT COURT OF BELL COUNTY
### NO. 23DFAM336769,
### THE HONORABLE CARI L. STARRITT-BURNETT, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Scott Carter Gillette appeals from the trial court's final decree of divorce following a final hearing.[1]  In two issues, Scott challenges the terms and conditions that the trial court placed on his possession of the parties' two children, who were 14 and 16 years old at the final hearing.  For the following reasons, we reverse the portion of the final decree that addresses the terms and conditions of Scott's periods of possession and access to the children and remand.

### BACKGROUND

The parties were married in February 2007 and lived in California before moving the family to Texas in July 2022.  Shortly after the move, Scott returned to California to renovate their house there, and the children lived with Stephanie in Texas.  Scott moved back to Texas around July 2023, but he did not live with his family.  In January 2023, Stephanie had filed a

---

[1] Because the parties have the same last name, we refer to them by their first names.

petition for divorce. She requested that the trial court on final hearing appoint the parties joint managing conservators and appoint her as the conservator with the exclusive right to designate the children's primary residence. Scott filed a counterpetition, in which he stated his belief that the parties would enter a "written agreement containing provisions for conservatorship of, possession of, access to, and support of the children." But if the parties were unable to agree, Scott requested that the trial court "make orders for conservatorship of, possession of, access to, and support of the children."

The final hearing occurred on April 4, 2024. At that time, the children continued to live with Stephanie, and her income continued to support the family. Scott had not been employed for more than five years. Among the issues that the parties had been unable to reach an agreement was about Scott's periods of possession of and access to the children. The parties agreed to be appointed joint managing conservators of the children with Stephanie as the conservator with the right to designate the children's primary residence, but they sought different periods of possession of and access to the children. Scott requested an expanded standard possession order, and Stephanie requested that Scott's periods of possession be less than a standard possession order. At the beginning of the hearing, Stephanie's attorney also advised the trial court that the children, who were 14 and 16 years old, wanted to speak with the trial court "about their requests regarding visits with their father."

The witnesses were the parties, and much of their testimony concerned their property and finances, but they also testified about their relationship and care of their children. Scott testified that when they were living in California, his mother and Stephanie were diagnosed with cancer and that he assisted them with their treatments. He also testified about his own health issues and his care of the children before the family moved to Texas. When Stephanie

2

was working and he was not, he "consistently and regularly" drove the children to school and to practices and "did everything that would—was needed to make sure that they were comfortable and happy." He "also shopped almost daily for food" and "would prepare meals and then also make lunches."

As to his contact with the children during the case, Scott testified that he communicated with the children often but that he saw them only when "approved by Stephanie," and that "she had full control of [their] children." He explained that he asked to see them "frequently," but "[u]sually there's a reason" why "it's not going to work out." When he did have them, they would do "whatever we can that's, you know, entertaining and fun because the time is so limited." He also testified that the children tell him they love him, and he answered, "Yes," when asked if the children were "willing to go with [him]." As to whether his children should have a say about when they see him, he testified that he would "always listen to [their] input" and that he thought they "do have a say." After he returned to Texas from California, he testified that he had the children overnight for "10 to 11 days total," described his health as "[n]ot too good," and explained he had been having pain constantly.

Stephanie testified that she and Scott did not live together after he left Texas in July 2022 to go back to California and that her employment had been the source of the family's income for more than five years. As to Scott's relationship with the children, Stephanie testified that the children love him but that "he is a very controlling person" and "[t]here's not a lot of opinions that are able to be expressed." She believed that his relationship with the children "had gotten better because he does have to make an effort to spend time with them" and that previously "it was mostly just at home," but she disputed his testimony about taking the children to and from school. She testified that he "would take them in sometimes," but when they were

3

both working, she "was always the person, the caretaker." She also testified that he tried to help her when she was receiving cancer treatment but that it caused her "more stress" because he is an "aggressive driver."

Stephanie did not "classify [Scott] as an involved parent in the community." She testified that she had "given him apps and made sure that he's on the email lists" for the children's activities but that she was not aware of him going to the children's schools and that he did not attend a recent award ceremony for one of his children. As to his involvement with the children when he was in the household with them, Scott would watch a movie or have a meal with the children if he made it, but "if somebody else cooks, he doesn't like to participate." When he cooks, he "wants to make sure everybody likes what they're eating and has to hear it more than once if it's good. If it's not good, [he] complains that he shouldn't ever cook for his family. It's not a pleasant family experience to sit down and eat."

As to Scott's periods of possession going forward, Stephanie testified that the children "do want to see him" and "to spend time with him" but that they "just don't want to spend the standard." They had proposed "something different"—"two weekends a month"—and they were comfortable with that. Stephanie testified that she thought that the trial court should talk to the children and let them have "some input" into their plan for contact with Scott and that they "would like their voices heard." At the conclusion of the testimony, the trial court advised the parties that it would interview the children and asked the parties if they wanted a record of the interviews or if they were waiving it. They both answered that they were not requesting a record. The trial court thereafter interviewed the children without recording the interviews.

In its final decree of divorce, the trial court appointed the parties joint managing conservators of the children with Stephanie having the exclusive right to designate the children's

4

primary residence and ordered a modified possession schedule. The trial court ordered periods of possession for Scott, including generally every other weekend and Thursday evenings, *see* Tex. Fam. Code §§ 153.313 (stating terms of standard possession order for parents who live less than 100 miles apart), but placed terms and conditions on Scott's periods of possession:

> 1. The periods of possession shall occur only when both children agree to visit [Scott].
>
> 2. Both children must be present during any period of possession until the oldest child is emancipated.
>
> 3. Both children individually and collectively, shall have the right to modify the terms, conditions, length of any period of possession including the right to refuse any period of possession including any periods of possession required by [Scott] or as contained in the Modified Possession Order below.
>
> 4. That any periods of possession for [Scott] shall be continuously supervised by [Stephanie] or a person designated by [her] until [Scott] shall complete an Anger Management Class and a Battering Intervention Class and shall file a Certificate of Completion for each class or other proof of completion with the Court and [Stephanie] at which time any future periods of possession by [Scott] shall be unsupervised.

This appeal followed.

## ANALYSIS

In two issues, Scott contends that the trial court abused its discretion by entering orders in the final decree of divorce that departed from the standard possession order "based on grounds that were not sufficiently plead[ed]" in Stephanie's petition and that the trial court "abused its discretion and lack[ed] a sufficient evidentiary record in departing from the Standard Possession Order."

5

**Standard of Review and Applicable Law**

We review issues of conservatorship, possession, and access for abuse of discretion. *In re M.B.*, No. 13-20-00061-CV, 2020 Tex. App. LEXIS 10336, at *5 (Tex. App.—Corpus Christi–Edinburg Dec. 30, 2020, no pet.) (mem. op.) (citing *Gardner v. Gardner*, 229 S.W.3d 747, 751 (Tex. App.—San Antonio 2007, no pet.)); *see Zeifman v. Michels*, 212 S.W.3d 582, 587 (Tex. App.—Austin 2006, pet. denied) (explaining that conservatorship decisions are within discretion of trial court and describing abuse of discretion standard of review).

Under an abuse of discretion standard, challenges to the legal and factual sufficiency of the evidence are not independent grounds of error; rather, they are simply factors in assessing whether the trial court abused its discretion. *London v. London*, 192 S.W.3d 6, 14 (Tex. App.—Houston [14th Dist.] 2005, pet. denied); *Zeifman*, 212 S.W.3d at 588. When an appellant challenges the sufficiency of the evidence in cases where the standard of review is abuse of discretion, we engage in a two-prong analysis: (1) whether the trial court had sufficient information upon which to exercise its discretion; and (2) whether the trial court erred in its application of discretion. *Zeifman*, 212 S.W.3d at 588. In determining whether the trial court had sufficient information, we use the traditional standards of review for legal and factual sufficiency. *See id.* (citing *Echols v. Olivarez*, 85 S.W.3d 475, 477–78 (Tex. App.—Austin 2002, no pet.)).

In this case, Scott challenges the trial court's deviation from the standard possession order by placing terms and conditions on his periods of possession. There is a rebuttable presumption that the standard possession order "provides reasonable minimum possession of a child for a parent named as a possessory conservator or joint managing

conservator" and "is in the best interest of the child." Tex. Fam. Code § 153.252; *see id.* §§ 153.251(a) (stating that guidelines established in standard possession order are intended as "minimum possession for a joint managing conservator"), .312 (providing standard terms of possession for parents who reside 100 miles or less apart). But "[j]oint managing conservatorship does not require the award of equal or nearly equal periods of physical possession of and access to the child to each of the joint conservators," *id.* § 153.135, and "[t]he best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child," *id.* § 153.002. Further, a trial court is "permitted to place conditions on a parent's access, such as supervised visitation, if necessary for the child's best interest." *In re K.S.*, 492 S.W.3d 419, 429 (Tex. App.—Houston [14th Dist.] 2016, pet. denied); *see id.* (stating that trial court may deviate from standard possession order "if necessary for the child's best interest"). If deviating from the standard possession order, the trial court may consider "the age, developmental status, circumstances, needs, and best interest of the child"; the circumstances of the conservators; and "any other relevant factor." Tex. Fam. Code § 153.256.

**Sufficiency of Pleadings**

In his first issue, Scott argues that the trial court abused its discretion because it departed from the standard possession order "based on grounds which were not sufficiently pleaded in the petition filed by [Stephanie]." He argues that her pleadings did not provide "fair notice" that she was raising issues of domestic violence, the "need for supervision," "special or unique grounds vesting 'agreement' discretion in the minor children," or "a claim that [he]

7

should be required to attend either anger management or battering invention class in deviation of the Standard Possession Order."

The Texas Rules of Civil Procedure require a trial court's judgment to "conform to the pleadings." Tex. R. Civ. P. 301. "And Texas follows a 'fair notice' standard for pleadings, which looks to whether the opposing party can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant." *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896 (Tex. 2000). "However, the supreme court stated decades ago, 'Technical rules of practice and pleadings are of little importance in determining issues concerning the custody of children.'" *Johnson v. Johnson*, No. 03-19-00196-CV, 2020 Tex. App. LEXIS 6396, at *24–25 (Tex. App.—Austin Aug. 13, 2020, no pet.) (memo. op.) (quoting *Leithold v. Plass*, 413 S.W.2d 698, 701 (Tex. 1967)); *see id.* at *25 (collecting cases following *Leithold* approach). Because a trial court is required to include certain provisions in its order in an original suit affecting the parent-child relationship (SAPCR), "it follows that a general request for determination of conservatorship in an original SAPCR 'necessarily imbues the trial court with discretion' to make the rulings required by the family code," "including addressing which parent should exercise which rights and duties, putting the children's best interest foremost in its consideration." *Id.* at *27 (citing *In re Marriage of Christensen*, 570 S.W.3d 933, 940 n.9 (Tex. App.—Texarkana 2019, no pet.)). In this context, "fair notice is afforded when the pleadings generally invoke the court's jurisdiction over custody and control of the children." *Christensen*, 570 S.W.3d at 940 (quoting *In re Macalik*, 13 S.W.3d 43, 45 (Tex. App.—Texarkana 1999, no pet.)).

In this case, the underlying proceeding was an original SAPCR; at the time of the final hearing, the parties had been unable to agree to Scott's periods of possession; and Scott's

counterpetition specifically requested that if the parties were unable to agree, the trial court "make orders for conservatorship of, possession of, access to, and support of the children." Stephanie also testified about Scott's "controlling" behavior toward the family when he was living in the household, both parties testified about his lack of contact and involvement with their teenage children after the parties' separation and during the case, both parties agreed that the children should have some input into their contact with Scott going forward, and both parties agreed to the trial court's interviewing the children in chambers. Scott also has not cited, and we have not found, authority that would require certain findings, such as a finding of domestic violence, before a trial court can place terms and conditions on a parent's possession or access to their child. *See* Tex. Fam. Code § 153.002 (stating that best interest of child is primary consideration in determining possession); *In re K.S.*, 492 S.W.3d at 429 (allowing trial court to place conditions on periods of possession when in child's best interest).

On this record, we cannot conclude that Scott has shown that Stephanie's pleadings were insufficient such that the trial court abused its discretion by placing terms and conditions on Scott's periods of possession of the children. *See Johnson*, 2020 Tex. App. LEXIS 6396, at *24–26. We overrule his first issue.

**Sufficiency of the Evidence**

In his second issue, Scott argues that the trial court abused its discretion by departing from the standard possession order because there was no evidence in the record to support supervised visits until he completed anger management and battering invention classes or to give the children "complete discretion to refuse or modify [his] possession and access time."

9

As noted above, as part of the final hearing, the trial court interviewed the parties' teenage children in chambers with the parties' agreement. *See* Tex. Fam. Code § 153.009(b) (authorizing trial court, as part of nonjury trial or hearing, to "interview the child in chambers to determine the child's wishes as to possession, access, or any other issue in the suit affecting the parent-child relationship"). When a trial court interviews a child in chambers, "the court 'may choose to either take into account the information learned at such an interview [under Section 153.009] or ignore it in its entirety.'" *In re A.A.S.*, No. 12-22-00207-CV, 2023 Tex. App. LEXIS 4769, at *11 (Tex. App.—Tyler June 30, 2023, no pet.) (mem. op.) (quoting *In re A.C.*, 387 S.W.3d 673, 678 (Tex. App.—Texarkana 2012, pet. denied)); *see also* Tex. Fam. Code § 153.009(c) ("[I]nterviewing a child does not diminish the discretion of the trial court in determining the best interests of the child.").

Because the parties waived a record of the trial court's interviews with their teenage children, we must presume that the trial court received information during the interviews that supports its decision to place the terms and conditions on Scott's possession and access to his children. *See In re E.E.*, No. 14-19-00779-CV, 2020 Tex. App. LEXIS 9378, at *4–5 (Tex. App.—Houston [14th Dist.] Dec. 3, 2020, no pet.) (mem. op.) ("Because no record of the in camera interview was made, we presume that there was evidence during that interview supporting the trial court's implied finding that a shared custody arrangement was not in the best interest of the second oldest child."); *In re Lau*, 89 S.W.3d 757, 760–61 (Tex. App.—Houston [1st Dist.] 2002, orig. proceeding) (presuming that there was evidentiary support for trial court's decision where the parent did not request record of in camera interview of child).

However, to the extent that the trial court made its best-interest decision based solely on the children's wishes that they expressed to the trial court during their interview, "no

10

legal authority . . . [supports taking] consideration of a child's desires to the extreme of granting that child—no matter how mature—complete discretion over possession of a parent." *Stone v. Stone*, No. 03-23-00801-CV, 2025 Tex. App. LEXIS 2678, at \*16–18 (Tex. App.—Austin Apr. 18, 2025, no pet.) (mem. op.) (quoting *In re S.V.*, 599 S.W.3d 25, 37 (Tex. App.—Dallas 2017, pet. denied) (concluding that trial court abused discretion by placing father's very limited access entirely within children's control after father had been verbally and physically abusive to older child)); *see also* Tex. Fam. Code §§ 153.193 (stating that trial court's restrictions on a parent's access and possession to child may not exceed what is necessary to protect best interest of child), .251(b) (stating that it is public policy of Texas to encourage frequent contact between children and their parents).

This Court has held that severe restrictions on a parent's access, such as giving the children total discretion to spend time with a parent, are justified in only limited or narrow circumstances. *See Stone*, 2025 Tex. App. LEXIS 2678, at \*16–18 (explaining that severe restrictions on parent's access, such as giving children total discretion to spend time with parent, are justified in only limited or narrow circumstances and listing types of facts warranting such restrictions such as violent and abusive relationships (citing *In re J.J.R.S.*, 627 S.W.3d 211, 218–21 (Tex. 2021))); *see also In re S.V.*, 599 S.W.3d at 37 (explaining that complete denial of access should be rare and that when trial court intends to deny possession and access, denial "should be ordered in plain, unambiguous language" (quoting *In re Walters*, 39 S.W.3d 280, 288 (Tex. App.—Texarkana 2001, no pet.))).

In this case, Stephanie testified that the children want to see and spend time with Scott going forward; that they had proposed "something different"—"two weekends a month"— and they were comfortable with that; and that Scott's relationship with the children had

improved.  Stephanie also did not testify that the children had been or would be in danger when with Scott during his periods of possession, she agreed to Scott's appointment as a joint managing conservator, and the trial court appointed Scott as a joint managing conservator.  *See* Tex. Fam. Code § 153.004(b) (prohibiting trial court from appointing parent as joint managing conservator if there is credible evidence of history or pattern of past or present child neglect or physical abuse by parent directed against child); *Stone*, 2025 Tex. App. LEXIS 2678, at *18–20 (observing that children had expressed desire to visit with parent and that opposing party "presented no evidence that supports the type of physical or emotional endangerment that courts have concluded supports a severe restriction on a conservator's possession and access" and collecting cases in which facts supported severe restrictions).

Because the trial court appointed Scott as a joint managing conservator, the record does not support an implied finding by the trial court from its interviews with the children or from any credible evidence that Scott had a history or pattern of past neglect or physical abuse of the children or Stephanie.  *See* Tex. Fam. Code § 153.004(b).  In this context, given Stephanie's testimony and Scott's appointment as a joint managing conservator and following this Court's holding in *Stone*, we conclude that the trial court abused its discretion by placing the challenged restrictions on Scott's periods of possession and access.  *See Stone*, 2025 Tex. App. LEXIS 2678, at *16–20; *In re S.V.*, 599 S.W.3d at 37.  Thus, we sustain Scott's second issue.

## CONCLUSION

For these reasons, we reverse the portion of the final decree that addresses the terms and conditions of Scott's periods of possession and access to the children and remand the case to the trial court to reconsider consistent with this opinion.[2]

_____

Rosa Lopez Theofanis, Justice

Before Justices Triana, Theofanis, and Crump

Reversed and Remanded

Filed:   July 16, 2025

---

[2] We deny Stephanie's request that we grant her $5,000 in attorney's fees.