

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-25-00008-CV

IN THE INTEREST OF J.R.J., A CHILD

On Appeal from the County Court at Law
Rusk County, Texas
Trial Court No. 2021-10-366

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens

MEMORANDUM OPINION

Mother and Father were divorced in March 2023 when their daughter, Jenna, was seven.[1] Among other things, the terms of the divorce decree provided both parents, who were joint managing conservators, a "Week On and Week Off Possession" schedule and ordered Father to maintain health insurance for Jenna. After the divorce was finalized, Mother remarried. She then filed a petition to modify the parent-child relationship to alter the possession schedule so Jenna could have more time to bond with her stepbrother, Bobby, and because Father had allowed Jenna's health insurance to lapse. After a bench trial, the trial court entered a final judgment providing Mother with her requested relief.

On appeal, Father argues that the trial court erred by modifying the orders in the prior divorce decree because there was no material and substantial change in the parties' circumstances and expanding the geographical limitations in the prior order was not in the best interest of the child. We find that ample evidence supports the trial court's finding of a material and substantial change and its best-interest finding. As a result, we find that the trial court did not abuse its discretion by modifying the parent-child relationship, and we affirm the trial court's judgment.

## I.      Factual and Procedural Background

The trial court's divorce decree named both parents as joint managing conservators, provided that Father was responsible for maintaining Jenna's health insurance, restricted "the primary residence of the child [to] be within the West Rusk Independent School District," and

---

[1]To protect the identity of the child, we assign the child and her family members fictitious names. *See* TEX. FAM. CODE ANN. § 109.002(d) (Supp.).

awarded a "Week On and Week Off Possession" schedule to each parent. Because the parties had relatively equal possession of and financial responsibility for Jenna, the trial court did not order child support in the divorce decree, but Mother was required to pay Father $25.00 per month for "cash medical support."

In April 2024, Mother married Stepfather, the lawyer who represented her in the divorce. In July 2024, Mother filed a petition to modify the parent-child relationship. Stepfather's son, Bobby, was already subject to a standard possession order that allowed Stepfather to possess Bobby on the first, third, and fifth weekends of each month. So that Jenna could develop a relationship with Bobby, Mother prayed for the trial court to implement a standard possession order so Father could exercise possession on the "second, fourth and fifth weekends" instead of the existing schedule of possession on the "first, third and fifth weekends."

Mother also alleged that Father failed to maintain Jenna's health insurance coverage and had let the coverage lapse "on or before November 1, 2023." Because she had obtained a private health insurance plan for Jenna at her expense, Mother requested that Father pay child support in accordance with the guidelines established by the Texas Family Code. Also, Mother and Stepfather were considering purchasing a larger home and did not want to remain restricted to the West Rusk Independent School District (ISD). Accordingly, she sought to be named the joint managing conservator with the exclusive right to determine the child's residence within Rusk County "and counties contiguous thereto." Father filed a general denial.

The evidence at trial established that both Mother and Father were good parents to Jenna, who loved them both and wanted them both to be happy. Father testified that Jenna was thriving

3

on the week-on, week-off possession schedule and said it took fifteen minutes or less to drive to Mother's house. Even so, Father admitted that Jenna suffered a concussion at school during his period of possession and that he had let the child's health insurance lapse. Father also testified that, although he had a gross income of $2,000.00 per month, he had not reimbursed Mother, who had paid out of pocket for Jenna's medical care related to the incident.

Mother testified that, since the divorce, she had obtained employment with the Rusk County Clerk's Office and was able to provide Jenna with insurance. Mother testified that she discovered there was no coverage for Jenna when she took her to the emergency room after suffering the concussion. Both Father and Mother testified that Father occasionally had difficulty with chronic pain and would take prescribed medication, when necessary, which affected his ability to drive. According to Mother, Father would occasionally miss counseling and medical appointments for Jenna because he was unable to drive.

Mother testified that Jenna had good grades but believed Jenna would be less stressed if she did not have to shuffle homes every week under the then-current possession schedule. Mother also said that Jenna had a great relationship with Bobby, who was fifteen, and that it was in Jenna's best interest to spend as much time with him as possible. Mother wanted to move to a larger home so Jenna could have her own room and wished for Jenna to have the option to attend the Henderson ISD because more extracurricular activities were available there, even though it had a worse statewide rating than West Rusk ISD.

Holly Nealy, a licensed clinical social worker, testified that she had been providing counseling services to Jenna since March 2024. Nealy was concerned that Jenna could have

4

autism because she "presented with hyperlexia" and had high-pitched speech, poor eye contact, and poor social skills. Even so, Nealy testified that Jenna was doing well in school but recommended extracurricular activities for Jenna that would assist her social skills. According to Mother, Henderson ISD had more activities to offer Jenna, and Mother could assure Jenna's attendance if she did not have to rely on Father to drive her. As a result, Mother wanted the exclusive right to designate Jenna's primary residence.

After hearing the evidence, the trial court granted Mother's petition and entered a judgment that (1) awarded Mother the exclusive right to designate Jenna's primary residence within Rusk County and contiguous counties, (2) gave Father standard possession and access but switched the weekends to accommodate Jenna spending more time with Bobby,[2] (3) ordered Mother to continue paying for Jenna's health insurance, (4) ordered Father to pay $340.00 per month in child support, and (5) ordered Father to pay $71.06 per month for the cost of health of insurance, as child support, to Mother.

## II.      Standard of Review

A court may modify an order providing for the possession of or access to a child "if modification would be in the best interest of the child and . . . the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed since . . . the date of the rendition of the order." TEX. FAM. CODE ANN. § 156.101(a)(1)(A).

---

[2]The trial court announced the following:

> Father's possession and access will be -- per the standard possession order with these exceptions: the weekends will fall on the second, fourth, and fifth weekend of each month, and he will also on Thursdays get the Thursday that precedes those weekends only. The holidays and school breaks will be even and odd, but I want the order such that it would coincide with the stepchild's times.

5

"We review a trial court's decision regarding custody, control, and possession matters involving [children] under an abuse of discretion standard." *In re B.F.*, No. 06-24-00100-CV, 2025 WL 2252577, at *5 (Tex. App.—Texarkana Aug. 7, 2025, no pet.) (mem. op.) (alteration in original) (quoting *In re D.W.J.B.*, 362 S.W.3d 777, 780 (Tex. App.—Texarkana 2012, no pet.) (citing *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982))). "A trial court abuses its discretion when its ruling is arbitrary, unreasonable, or without reference to any guiding rules or legal principles." *Id.* (quoting *In re D.W.J.B.*, 362 S.W.3d at 780 (citing *K-Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex. 2000) (per curiam))).

"Under the abuse-of-discretion standard, 'legal and factual sufficiency of the evidence are relevant factors in assessing whether the trial court abused its discretion, but are not independent grounds of error.'"[3] *Id.* (quoting *In re M.O.*, No. 06-19-00004-CV, 2019 WL 2518470, at *5 (Tex. App.—Texarkana June 19, 2019, no pet.) (mem. op.)). "In our analysis, we determine 'whether the trial court had sufficient evidence on which to exercise its discretion, and, if so, whether it erred in the exercise of that discretion.'" *Id.* (quoting *In re M.O.*, 2019 WL 2518470, at *5). "Based on the evidence, we then determine whether the court's decision was arbitrary or unreasonable." *Id.* (quoting *In re M.O.*, 2019 WL 2518470, at *5).

"In our analysis, we must 'recognize that "[t]he trial court is in the best position to observe the demeanor and personalities of the witnesses and can 'feel' the forces, powers, and influences that cannot be discerned by merely reading the record."'" *Id.* (alternation in original)

---

[3]"Since [Father] did not have the burden of proof at trial, legal sufficiency is analyzed as a no-evidence challenge." *In re Marriage of Brooks*, No. 06-23-00012-CV, 2023 WL 5486242, at *1 (Tex. App.—Texarkana Aug. 24, 2023, no pet.) (mem. op.). "In assessing factual sufficiency, we are to consider all of the record evidence, not just the evidence supporting the judgment." *Id.* (quoting *In re A.B.O.*, No. 06-14-00071-CV, 2015 WL 2236593, at *6 (Tex. App.—Texarkana 2015, no pet.) (mem. op.)).

(quoting *In re M.O.*, 2019 WL 2518470, at *6 (quoting *In re Marriage of Christensen*, 570 S.W.3d 933, 937 (Tex. App.—Texarkana 2019, no pet.))). "We will not find that the trial court abused its discretion 'if there is some evidence of a probative and substantive character to support its decision.'" *Id.* (quoting *In re M.O.*, 2019 WL 2518470, at *6).

## III.    Analysis

In his first point of error, Father argues that no evidence supported the trial court's finding that a material and substantial change in the parties' circumstances had occurred. "A court's determination of whether a material and substantial change of circumstances has occurred is not based on rigid rules and is fact-specific." *In re Marriage of Brooks*, 2023 WL 5486242, at *2 (quoting *In re T.I.*, No. 06-20-00089-CV, 2021 WL 3669339, at *5 (Tex. App.—Texarkana Aug. 19, 2021, no pet.) (mem. op.)). "Material changes may be established by either direct or circumstantial evidence." *Id.* (quoting *In re T.I.*, 2021 WL 3669339, at *5). "Whether a particular change is material and substantial depends on the circumstances of each case." *Id.* (quoting *In re T.I.*, 2021 WL 3669339, at *5).

Here, the record establishes that since the entry of the divorce decree, Mother had remarried and was living in a home with Stepfather, Jenna, and Bobby. "[R]emarriage of a parent who has been appointed a conservator can constitute a material change of circumstances." *Id.* (alteration in original) (quoting *In re T.I.*, 2021 WL 3669339, at *8). Moreover, since the divorce decree, Father had violated the decree by failing to maintain Jenna's health insurance,[4] Mother had to obtain private insurance for the child, and Mother had since obtained employment

---

[4]"[E]vidence that a party violated the court's order may support a finding of a material and substantial change of circumstances." *In re T.I.*, 2021 WL 3669339, at *8.

that allowed Jenna to have medical insurance through Mother's employer.[5]   Accordingly, we find that the record presents ample evidence to support the trial court's decision that the circumstances of the parties had materially and substantially changed since the entry of the divorce decree.  As a result, we overrule Father's first point of error.

In his second point of error challenging the geographical restriction, Father argues that allowing Mother to move Jenna to contiguous counties was not in the child's best interest.  A child's best interest is always "the primary consideration of the court in determining the issues of . . . possession of and access to the child."  TEX. FAM. CODE ANN. § 153.002(a).  "[F]actors that may be relevant to the determination of a child's best interest" regarding relocation include the following:

> (1) the reasons for and against the move, (2) the education, health, and leisure opportunities afforded by the move, (3) the accommodation of the child's special needs or talents, (4) the effect on extended family relationships, (5) the effect on visitation and communication with the noncustodial parent, (6) the noncustodial parent's ability to relocate, and (7) the child's age.

*In re Marriage of Christensen*, 570 S.W.3d at 938 (citing *Lenz v. Lenz*, 79 S.W.3d 10, 15–16 (Tex. 2002)).

On this matter, Mother's testimony supported the trial court's findings that altering the terms of Jenna's possession schedule to match Bobby's so the two could spend more time together would be better for Jenna.  That had bearing on the geographical limitation issue because the trial court heard evidence that Mother and Stepfather were looking for a bigger house so Jenna could have her own room, which the trial court impliedly found was in Jenna's

---

[5]For this reason, the trial court determined it would be best to leave the responsibility to provide medical insurance to Mother and to award child support in accordance with Texas Family Code guidelines.

best interest. It also heard evidence that, even though Jenna was attending a good school, Nealy believed Jenna should be involved in more extracurricular activities to assist her possible autism and, at the very least, to build her social skills. Mother testified that Jenna's then-current school did not offer enough extracurricular activities for Jenna, which supported the trial court's finding that Jenna should not be restricted to West Rusk ISD. As for the remaining applicable *Lenz* factors, the trial court heard no evidence that a possible move to a contiguous county would have any effect on the child's familial relationships with extended family or that Father would not be able to maintain a full and continuous relationship with Jenna if she were to move to a different school district within Rusk County or a contiguous county. Further, Father did not argue that he could not relocate to be closer to Jenna. Consequently, based on the record before us, we cannot say that the trial court abused its discretion in determining that the *Lenz* factors weighed in favor of modifying the geographic restriction.

Because probative evidence substantively supported the trial court's modifications, we cannot say that the trial court abused its discretion by making them. *See In re T.I.*, 2021 WL 3669339, at *9.

III. **Conclusion**

We affirm the trial court's judgment.

Scott E. Stevens
Chief Justice

Date Submitted: October 1, 2025
Date Decided: October 21, 2025

9